Dr. Terry Fiddler, Chairman Arkansas Advisory Commission on Mandated Health Benefits 562 Locust Street Conway, AR 72032
Dear Dr. Fiddler:
I am writing in response to your request for my opinion concerning the duties and responsibilities of the Arkansas Advisory Commission on Mandated Health Benefits (hereinafter the "Commission"). As background for your questions, you have provided a brief overview of the Commission's statutory responsibilities, which you conclude by noting that although the legislature in 2005 appropriated $150,000 for the Commission from the General Improvement Fund, no funds were actually dispensed. You further report that "[a]s of this date, the Commission has no funds or resources, other than resources and time its own personal members decide to donate or dedicate to the responsibilities of this Commission." Against this background, you ask:
 1. Please advise us what are the exact duties and responsibilities for the Commission during each legislative session, as required by Ark. Code Ann. § 23-79-906.
 2. Is the Commission required to provide an annual report under Ark. Code Ann. 23-79-903(d) in the absence of funding by the state legislature?
 3. During the legislative session, is the Commission required to review and report on a proposed bill containing a mandated benefit and service under Ark. Code Ann. § 23-79-906(a)(1)(a)(ii) before it can be validly enacted by the legislature, or is it just the bills referred to it by a majority of the referring legislative committee, which the Commission has to review? Under either scenario, is this reporting requirement during the session lawful or constitutional?
RESPONSE
In my opinion, the Commission is responsible for reviewing and reporting on any bill or interim study proposal that is referred for its evaluation pursuant to A.C.A. § 23-79-906, with the understanding that the absence of funding may have the practical effect of limiting the efficacy of the reporting requirement. With regard to your specific questions, therefore, it is my opinion in response to your first question that the Commission must evaluate and report on any bill in accordance with subsection 23-79-906 as best it can with available resources. The answer to your second question is in all likelihood "no," in my opinion. In response to the first part of your third question, the Commission in my opinion is only required to review and report on bills that are referred to it by a majority of the referring committee. The answer to the second part of this question is "yes," in my opinion.
Question 1 — Please advise us what are the exact duties andresponsibilities for the Commission during each legislativesession, as required by Ark. Code Ann. § 23-79-906.
I assume from your preliminary statements that this question is prompted by the lack of funding, since the duties prescribed under this statute are otherwise fairly straightforward. The Commission is required to review and report on bills pursuant to A.C.A. § 23-79-906, which applies to "a bill . . . filed with the House of Representatives or the Senate or an interim study proposal" that "contains a proposed mandated health insurance service or benefit." A.C.A. § 23-79-906(a)(1)(A)(i) (Supp. 2005).[1] No bill containing a "mandated health insurance service or benefit" can be enacted into law unless it has been reviewed and evaluated by the Commission. Id. at (a)(1)(A)(ii) The Commission's duties are triggered by the legislature's determination that such a bill or interim study proposal "contain[s] sufficient merit to warrant further consideration."Id. During a legislative session, such determination would be made by the legislative committee to which the bill was assigned; otherwise no further action may be taken on the bill. Id. at (a)(2). Upon receiving the bill, the Commission must perform its review and must "submit its evaluation within forty-five (45) days from the date the commission receives the referral. . . ."Id. at (a)(3). The report must include certain specifically prescribed information with respect to the social impact, the financial impact, and the medical efficacy of mandating the health insurance service or benefit. Id. at (b).
Given the relatively clear statutory charge, I assume that the Commission is primarily concerned regarding the impact of the lack of funding on its duties and responsibilities under this Code section. As you have noted, an appropriation was enacted for the Commission at the 2005 regular legislative session. See
Acts 2005, No. 371, § 1 (appropriating $150,000 from the General Improvement Fund "[f]or costs associated with the operation of the Arkansas Advisory Commission on Mandated Health Benefits . . ."). It is my understanding that the funds were never scheduled to be allocated from the General Improvement Fund.
In my opinion, the lack of funding does not relieve the Commission of its duty under subsection 23-79-906 to evaluate and report on a bill containing a "proposed mandated health insurance service or benefit" that it has received for review, although the funding constraint may well have a negative impact on the efficacy on the Commission's review. I note in particular that it appears the Commission will be unable to contract for professional services as authorized under A.C.A. § 23-79-904(a) (Repl. 2004) (stating that the Commission "may contract for actuarial services and other professional services as needed). This undoubtedly will cause difficulties and may mean that the Commission is unable to fully report on the matters outlined in subsection 23-79-906, which I note are extremely broad in scope.See A.C.A. § 23-79-906(b)(1) — (3).[2] I cannot further speculate, however, whether any particular element of the reporting requirement would be rendered impractical by the funding void. That would depend upon the particular bill and other factors outside the scope of this opinion. The main point for purposes of your question is that the legislature has clearly manifested its intent to require the Commission's review of a bill that has been determined, pursuant to subsection 23-79-906, to warrant such review. This follows from the statute's plain language.
I also find it relevant that the Commission's duties under subsection 23-79-906 do not appear to be dependent upon the availability of funding. The State Insurance Commission and other state agencies are required to provide staff assistance to the Commission. See A.C.A. § 23-79-904 (Repl. 2004) (stating that "[t]he State Insurance Department and other state agencies, as may be considered appropriate by the commission, shall provide staff assistance to the commission.") Additionally, there is no reference in subsection 23-79-206 to any funding contingency. This is in stark contrast to the reporting requirement under subsection 23-79-903 with respect to "existing" mandated health benefits. This latter reporting mandate is explicitly subject to the availability of "funds or resources." Subsection 23-79-903(d) states:
 To the extent that funds or resources are available to the commission, the commission shall review existing mandated health insurance services and benefits under the requirements of this section and shall report its findings to the House Interim Committee on Public Health, Welfare, and Labor and the Senate Interim Committee on Public Health, Welfare, and Labor on or before November 1 of each year. The commission shall include the findings in its report required to be submitted under § 23-79-905.
A.C.A. § 23-79-903(d) (Supp. 2005) (emphasis added).
This funding contingency is notably absent with respect to bills filed with the House of Representatives or Senate and interim study proposals. The absence of the funding limitation implicates the legal maxim "expressio unius, alterius est exclusioalterious" (the expression of one thing is the exclusion of the other). See generally Gazaway v. Greene County EqualizationBd., 314 Ark. 569, 575, 864 S.W.2d 233 (1993). This principle supports the conclusion that the legislature did not intend to condition the Commission's review of referred bills or proposals upon the availability of funds.
Accordingly, while it may well be that the Commission is able to realize only a modest measure of its potential as a consequence of the failure to fund the appropriation, I find it doubtful that the difficulties would be considered to render administration impossible so as to relieve the Commission of its evaluation and reporting duties. In sum, it seems that the Commission must perform its duties and responsibilities as best it can with available resources.
Question 2 — Is the Commission required to provide an annualreport under Ark. Code Ann. 23-79-903(d) in the absence offunding by the state legislature?
To clarify, this question presumably refers to the reporting requirement under A.C.A. § 23-79-903(d), excerpted above, concerning "existing mandated health insurance services and benefits." For ease of reference, I will restate this subsection. It provides:
 To the extent that funds or resources are available to the commission, the commission shall review existing mandated health insurance services and benefits under the requirements of this section and shall report its findings to the House Interim Committee on Public Health, Welfare, and Labor and the Senate Interim Committee on Public Health, Welfare, and Labor on or before November 1 of each year. The commission shall include the findings in its report required to be submitted under § 23-79-905.
A.C.A. § 23-79-903(d) (Supp. 2005).
The November 1 annual report is therefore distinct from the other report referenced in this subsection — the report under A.C.A. § 23-79-905, which must be submitted "[e]ach December 31 immediately preceding a regular session. . . ."[3] The annual reporting requirement pertaining to "existing" mandates is plainly conditioned upon the availability of "funds or resources." Given the absence of funding and the consequent inability of the Commission to contract for professional services as authorized by A.C.A. § 23-79-904(a), supra, I believe it reasonably follows that there are no "funds or resources" available to the Commission for the annual report as contemplated by subsection 23-79-903(d). I recognize that the Commission is authorized to obtain "staff assistance" from state agencies. A.C.A. § 23-79-904 (b) (Repl. 2004), supra. That assistance would appear to be distinct, however, from the separately referenced "resources" upon which the November 1 annual reporting requirement is conditioned. This leads me to conclude that in the absence of any allocation of funds, the Commission lacks the requisite "funds or resources" to annually review and report on existing mandates.
Question 3 — During the legislative session, is the Commissionrequired to review and report on a proposed bill containing amandated benefit and service under Ark. Code Ann. §23-79-906(a)(1)(a)(ii) before it can be validly enacted by thelegislature, or is it just the bills referred to it by a majorityof the referring legislative committee, which the Commission hasto review? Under either scenario, is this reporting requirementduring the session lawful or constitutional?
With regard to the first part of this question, as indicated above, the Commission in my opinion is only required to report during a legislative session on those bills that are referred to it by a majority of the referring legislative committee.
In response to the second part of the question, A.C.A. § 23-79-906 is presumed constitutional and the burden of proving otherwise is on the challenger of the statute. See generallyRose v. Arkansas State Plant Board, ___ Ark. ___, ___ S.W.3d ___ (September 22, 2005). You have not suggested, nor do I perceive, any clear basis for a challenge to this statute. The legislature clearly may not delegate the power to enact a law or to declare what a law shall be. McArthur v. Smallwood, 225 Ark. 328, 331,281 S.W.2d 428 (1955). In my opinion, however, there is no suggestion under A.C.A. § 23-79-906 that the legislature has surrendered the power to enact the law by requiring the Commission's review and evaluation of filed bills and proposals. The reporting requirement is lawful and constitutional, in my opinion.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
 MIKE BEEBE Attorney General
MB:EAW/cyh
[1] The term "mandated health insurance services or benefits" means the same as "state-mandated health benefits" as defined by A.C.A. § 23-86-502. A.C.A. § 23-79-903(a)(2) (Supp. 2005). Subsection 23-86-502(15) (Supp. 2005) defines "State-mandated health benefits" as follows:
 (A)(i) "State-mandated health benefits" means coverages for health care services or benefits required by state law or state regulations requiring the reimbursement or utilization related to a specific health illness, injury, or condition of the covered person or the inclusion of a specific category of licensed health care practitioner to be provided to the covered person in a health benefits plan for a health-related condition of a covered person.
 (ii) However, for the purposes of the options provided by this subchapter, state-mandated health benefits that may be excluded, in whole or in part, shall not include any health care services or benefits that were mandated by Acts 1971, No. 34.
 (B) "State-mandated health benefits" does not mean standard provisions or rights required to be present in a health benefit plan pursuant to state law or state regulations unrelated to a specific health illness, injury, or condition of the insured, including, but not limited to, those related to continuation of benefits in § 23-86-114, or entitlement to a conversion policy under § 23-86-115[.]
[2] I will not set forth the extensive text of these provisions, but will simply note that the matters upon which the Commission is expected to report under the areas of "social impact," "financial impact" and "medical efficacy" are extremely varied and substantial in scope.
[3] Subsection 23-79-905 states in full:
 Each December 31 immediately preceding a regular session of the General Assembly, the Arkansas Advisory Commission on Mandated Health Insurance Benefits shall submit a report on its findings, including any recommendations, to the Governor and the General Assembly.
A.C.A. § 23-79-905 (Repl. 2004). It seems that the intent is for this biennial report to include findings with respect to existing mandated services and benefits along with the Commission's other findings concerning bills and proposals that were reported on pursuant to A.C.A. § 23-79-906, supra.